**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **SHAWANDA BAILEY,** | } | |
| **o.b.o. K.D.B., a minor child,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No.: 2:09-CV-1673-RDP** |
| | } | |
| **MICHAEL J. ASTRUE,** | } | |
| **COMMISSIONER OF** | } | |
| **SOCIAL SECURITY,** | } | |
| | } | |
| **Defendant.** | } | |

**MEMORANDUM OF DECISION**

Plaintiff Shawanda Bailey brings this action on behalf of her daughter, K.D.B., pursuant to Title XVI of Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for Children's Supplemental Security Income ("SSI"). *See also*, 42 U.S.C. § 1383(c). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.      Proceedings Below**

Plaintiff filed her application for SSI on behalf of K.D.B. on March 27, 2007 in which she alleged that disability began on June 1, 2003. (Tr. 95). Plaintiff's application was initially denied by the Social Security Administration on May 11, 2007. (Tr. 80). Plaintiff then requested and received a hearing before Administrative Law Judge L. K. Cooper ("ALJ") on October 20, 2008. (Tr. 39-67, 85). In his decision, dated May 11, 2009, the ALJ determined that K.D.B. had not been under a disability within the meaning of § 1614(a)(3)(C) of the Act since March, 27 2007, the date the application was filed. (Tr. 22-30). After the Appeals Council

denied Plaintiff's request for review of the ALJ's decision (Tr. 1), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

K.D.B. was fifteen years old at the time of the hearing.  (Tr. 41, 131).  Plaintiff alleges that K.D.B. has been disabled since June 1, 2003 because of asthma.  (Tr. 99).  Additionally, Plaintiff introduced at the ALJ hearing that K.D.B. suffers from a learning disability.  (Tr. 42). K.D.B. has never worked.  (Tr. 103).

During her alleged period of disability, K.D.B. received treatment primarily from Children's Health System.  (Tr. 218-31, 255-60, 262-66, 284-379). A progress note from Dr. Hartig of Children's Health System dated October 29, 2005, describes K.D.B. as a "12-year-old with asthma exacerbation, resolving" and notes a subjective opinion that K.D.B. "has done well."  (Tr. 223).  On December 9, 2005, Dr. Lyrene of Children's Health System diagnosed K.D.B. with "moderate persistent asthma" and noted occurrences of nosebleeds and atopic dermatitis.  (Tr. 221-22).  Plaintiff has reported K.D.B.'s medication to include Advair, Albuterol, Prednisone, and Singular.  (Tr. 101).  On March 27, 2007, K.D.B. was taken to the Children's Health Center Emergency Department for wheezing.  (Tr. 255).  The examining nurse noted that K.D.B. had "been off asthma medication for four days."  (Tr. 256).  According to the medical records, Plaintiff explained that they "ran out of [K.D.B.'s] Advair, Flovent, Singular, and Albuterol several days ago" and that K.D.B. began experiencing problems three to four days before the emergency room visit.  (Tr. 257).  According to Plaintiff, K.D.B. did "not ha[ve] any medicine to treat her asthma exacerbation[,] so they came to the ER."  (*Id.*)  Plaintiff was discharged after being given three doses of Albuterol and Atrovent and a single dose of Prednisone.  (Tr. 257-59).

On May 10, 2007, Dr. Tatum, a treating physician, conducted a disability evaluation of K.D.B., noting that "[K.D.B.] has moderate persistent asthma." (Tr. 268). He commented that "[s]he was last seen in clinic in April [2007] [at] which time her asthma was somewhat well-controlled." (*Id.*) He further noted that "[K.D.B.] attends school in regular classes. She has not had any admissions since [October 2005]. Her asthma has placed only mild limitations on [K.D.B.]." (*Id.*)

K.D.B. presented to the Children's Health Center Emergency Department on December 3, 2007 for asthma exacerbation. (Tr. 310). She was admitted into the hospital for treatment and released four days later with a noted disposition of "good." (*Id.*). K.D.B. returned to the Children's Health Center Emergency Department on January 29, 2008 and on November 5, 2008 for asthma-related problems; in both cases, she was discharged after receiving asthma medication. (Tr. 284-86, 300-05). With regards to K.D.B.'s asthma, a childhood disability evaluation form completed by Dr. Whitney and Dr. Fleece concluded that K.D.B.'s impairment or combination of impairments is severe, but does not meet, medically equal, or functionally equal the Listings. (Tr. 271-72).

## II.    ALJ Decision

For a child to be determined disabled as defined under the Act, the child must "have a medically determinable physical or mental impairment or combination of impairments that causes marked and severe functional limitations, and that can be expected to cause death or that has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.906. A physical or mental impairment is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

3

Social Security regulations provide a three-step test for determining whether a child is disabled. 20 C.F.R. § 416.924(a); *see e.g. Wilson v. Apfel*, 179 F.3d 1276, 1277 n.1 (11th Cir. 1999); *Cole v. Barnhart*, 436 F.Supp.2d 1239, 1241 (N.D. Ala. 2006). First, the ALJ must determine whether the child is engaging in substantial gainful activity. "Substantial gainful activity" is work activity that involves doing significant physical or mental activities for pay or profit. 20 C.F.R. § 416.972. If the child engages in substantial gainful activity, then the child cannot claim disability regardless of the child's medical condition. 20 C.F.R. § 416.924(b). If the child is found to not be engaging in substantial gainful activity, the analysis proceeds.

In the second step, the ALJ must determine whether the child has a medically determinable impairment or a combination of medical impairments that is "severe" under the Act. 20 C.F.R. § 416.924(c). At this stage of the analysis, "severe" as understood under Social Security Regulations requires that the child have a medically determinable impairment, or an impairment or combination of impairments, that is not merely a slight abnormality that causes no more than minimal functional limitations. *Id.* Absent such a "severe" impairment, the child may not claim disability. *Id.*

Third, the ALJ must determine whether the child's impairment meets or medically equals an impairment included in the Listing of Impairments listed in 20 C.F.R. § 404, Subpart P, Appendix 1 (a "Listing"). 20 C.F.R. § 416.924(d). If the child's impairment meets a Listing, the child is declared disabled. *Id.* Alternatively, the child may also be declared disabled if the child's impairment or combination of impairments functionally equals a Listing. *Id.* In determining whether the child's impairment or combination of impairments functionally meets a

Listing, the ALJ must consider the child's functional capacity with regard to six domains.[1]  20 C.F.R. § 416.926a.  To functionally equal a Listing, the child's impairment or combination of impairments must result in "marked" limitations in two of the domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a(d).  A "marked" limitation is one that "interferes seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(2)(i).  It is "more than moderate" but "less than extreme" and is equivalent to the functioning one "would expect to find on standardized testing with scores that are at least two, but less than three, standard deviations below the mean."  *Id.*  An "extreme" limitation is one that "interferes very seriously with [the child's] ability to independently initiate, sustain, or complete activities."  20 C.F.R. § 416.926a(e)(3)(i).  A finding of "extreme" limitation requires a limitation that is "more than marked" and is "the equivalent of the functioning [one] would expect to find on standardized testing with scores that are at least three standard deviations below the mean."  *Id.*  In assessing whether the child has a "marked" or "extreme" limitation or combination of limitations, the ALJ must consider the functional limitations from all medically determinable impairments, including impairments that are not severe. 20 C.F.R. 416.926a(a).  The ALJ must consider the interactive and cumulative effects of the child's impairment or combination of impairments in any affected domain.  20 C.F.R. 416.926a(c).

---

[1]A domain is a broad area of functioning.  The six domains considered in determining whether a child's impairment functionally equals a Listing are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(i)-(vi).

In the instant case, the ALJ determined that K.D.B., the child claimant, has not engaged in substantial gainful activity and has a combination of severe impairments that satisfies step two of the analysis. (Tr. 25). The ALJ then found that K.D.B. "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1," noting that:

> No treating or examining source or medical expert has found that claimant has an impairment or combination of impairments that meet or medically equals a listed impairment. In addition, the Administrative Law Judge has examined the record and finds that the evidence does not support such a conclusion. This includes examination of the listed impairments at sections 103.03 and 112.05.

(Tr. 29). The ALJ then concluded that K.D.B. "does not have an impairment or combination of impairments that functionally equals the listings." (*Id.*) In reaching his conclusion, the ALJ found that K.D.B had "[l]ess than marked limitation[s]" in all six domains and that "the testimony and other allegations of disability made on her behalf are disproportionate to the objective medical evidence" since "[t]here are no diagnostic studies to show abnormalities that could be expected to produce such severe symptoms." (*Id.*)

## III.  Plaintiff's Argument for Reversal

Although Plaintiff has divided her discussion into four topics, to say that it is difficult to follow the arguments in her brief would be an understatement. In the interest of carefully examining the merits of Plaintiff's claim, the court has scrutinized Plaintiff's brief and found nine specific allegations: (1) "[K.D.B.] meets the Listing of Childhood Impairments for asthma" (Pl.'s Mem. 5); (2) the IQ test in the record was outdated by the time the Appeals Council made its decision (Pl.'s Mem. 6); (3) the "ALJ failed to show good cause why [K.D.B's] treating source should not be given substantial or considerable weight" (Pl.'s Mem. 6-8); (4) there is no explanation as to why a reference to K.D.B.'s medications was not included in the ALJ's

decision (Pl.'s Mem. 7); (5) the ALJ made errors in summarizing the medical evidence, substituting "has done well" for "resolving" and "mild" for "moderate" (Pl.'s Mem. 9); (6) the ALJ discredited Plaintiff's (Shawanda Bailey's) testimony without providing explicit and adequate reasons for doing so (Pl.'s Mem. 9); (7) the ALJ should have mentioned a different Teacher Questionnaire in his decision (Pl.'s Mem. 10); (8) the ALJ "failed to properly consider whether [K.D.B.] meets the Listing at 112.05 because there was not a valid verbal, performance, or full-scale IQ score" (Pl.'s Mem. 10); and (9) the ALJ "erred in failing to seek a [c]onsultative [e]xam[,] which would include a [p]sychological [e]valuation and also in failing to have a [m]edical [e]xaminer provide testimony at the hearing." (Pl.'s Mem. 11).

## IV.    Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); s*ee also Martin,* 894 F.2d at 1529. Legal standards are reviewed *de novo*. *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005).

## V.      Discussion

For the sake of organization, the court has grouped Plaintiff's allegations in categories based upon the subject matter of each allegation and considered them collectively by category. In her arguments, Plaintiff has raised the following: (a) one issue (which appears to be Plaintiff's core position) which concerns whether K.D.B.'s asthma should have been found to meet a Listing; (b) three issues alleging failures by the ALJ to accurately include evidence in his decision; (c) two issues alleging that the ALJ gave improper weight (or improperly little weight) to testimony; and (d) two issues referencing the ALJ's duty to develop a full and fair record.

### a.      Whether K.D.B. Qualifies as Disabled under the Act is a Question Reserved for the ALJ.

Plaintiff argues whether "[K.D.B.] meets the Listing of Childhood Impairments for asthma at 103.03." (Pl.'s Mem. 5).  The scope and import of Plaintiff's arguments suggest that Plaintiff believes that the court's review of the ALJ's decision is *de novo*.  It is not.  Whether K.D.B. meets the Listing and qualifies for Social Security benefits under the Act is a question reserved for the ALJ.  This court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  The court's review of the ALJ's decision is limited to whether his decision is supported by substantial evidence and whether the correct legal standards were applied.  42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d at 1221.  For the reasons explained below, the court finds that the ALJ correctly applied the appropriate legal standards and that the ALJ's decisions are supported by substantial evidence.

**b.      The ALJ Neither Misproduced Nor Failed to Include Relevant Evidence in His Decision.**

**1.      The ALJ Did Not Commit Error by Failing to Mention K.D.B.'s Medication.**

Plaintiff contends that the ALJ erred in failing to mention K.D.B.'s medication, commenting that K.D.B. "takes numerous daily medication [sic] including Advair, Singular, Ventolin, Albuterol, Fluticasone, [and] Nizoral," yet "[t]hese medications were not mentioned in the analysis." (Pl.'s Mem. 7). Plaintiff concludes that "[t]here is simply not an explanation as to why they were not included in the decision." (Pl.'s Mem. 7).

The court has found no legal support for the proposition that a mere failure by an ALJ to enumerate a claimant's medication, by itself, demonstrates a lack of substantiation. To the extent that the Eleventh Circuit has deemed an omission by an ALJ to consider medication to be a violation of the ALJ's duty to develop the record, such a finding has been reached where the claimant has clearly alleged that side effects from taking the medication in question contribute to the claimant's disability. For example, in *McDevitt v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 615, 619 (11th Cir. 2007), the Eleventh Circuit found that the ALJ had failed to properly develop the record by not considering the claimant's testimony as to side effects caused by his medication because the claimant in that case had specifically testified that the medication that he was taking at the time impaired his ability to work as a telemarketer. Conversely, the Eleventh Circuit has held in *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992), that the ALJ in that case did not err by failing to make findings regarding the claimant's medication because the claimant had neglected to provide evidence that he was taking medication that caused side-effects. Taken together, Eleventh Circuit case law suggests that the failure by an ALJ to take a claimant's medication into account constitutes error when the claimant's medication results in effects that

9

materially contribute to the claimant's disability.  However, even if there are other situations where an ALJ's failure to account for, or make findings about, a claimant's medication would constitute error (and the court has no doubt there are), there is no showing of error here.  Plaintiff has the burden of showing that the medications relate to a claim of disability, and has not done so.

Here, Plaintiff does not allege that side effects from K.D.B.'s medication contribute significantly to K.D.B.'s impairments.[2]  On the contrary, at least with regard to K.D.B.'s asthma, hospital records tend to indicate improvements in K.D.B.'s physical condition upon taking medication and at least one case in which K.D.B.'s visit to the emergency room resulted after not taking medication for four days.  (Tr. 256, 310, 284).  Since Plaintiff neglects to demonstrate the materiality of K.D.B's medication and fails to present a theory articulating why the ALJ should have included K.D.B.'s medication in his decision, the court cannot conclude that this was an error on the part of the ALJ.

### 2.     The ALJ Did Not Misrepresent Medical Records.

Plaintiff also alleges that the ALJ inaccurately reproduced the medical record in citing only part of Dr. Hartig's testimony and misquoting Dr. Tatum by describing K.D.B.'s asthma as "mild" rather than "moderate."  (Pl.'s Mem. 9).  Regarding Dr. Hartig's testimony, Plaintiff contends that the ALJ took Dr. Hartig's statement out of context by quoting his finding that Plaintiff "has done well" but not also quoting the rest of the report in which Dr. Hartig also finds

---

[2]As noted on page 9 of her brief, Plaintiff did testify regarding side effects of K.D.B.'s asthma medication.  (Tr. 56).  However, the argument that K.D.B.'s medication itself contributed sufficiently to render K.D.B. disabled was not presented to the ALJ and therefore not an issue appropriate for this court to review.  *See Wheeler v. Heckler*, 784 F.2d 1073, 1077 (11th Cir. 1986).

that Plaintiff "is a 12-year-old with asthma exacerbation, resolving" and indicates that K.D.B was discharged to home.  (Pl.'s Mem. 8).  This argument does not hold water.  It is well-settled in this jurisdiction that an ALJ is not required to cite every piece of evidence in the record, so long as the ALJ references the record in a fair and balanced manner that does not misrepresent the evidence. *See Dyer v. Barnhart*, 395 F.3d at 1211 ("there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision . . . is not a broad rejection which is 'not enough to enable [the district court or this Court] to conclude that [the ALJ] considered h[is] medical condition as a whole.") (internal quotations omitted).  An ALJ, like any other hearing officer, is afforded some discretion in how he chooses to distill facts from the body of evidence before them.  Such a task requires careful judgment, and due to the hearing officer's particular expertise and closer proximity to the evidence, this court's appellate review will not disturb the judgment of the ALJ absent a sufficient reason.

The court finds no error with the ALJ's selection of quotes. The ALJ directly quoted a line from Dr. Hartig's evaluation that summarizes and is entirely consistent with the rest of Dr. Hartig's evaluation.  As for Plaintiff's assertion that the ALJ misquoted Dr. Tatum, this claim misses the mark.  The ALJ quoted Dr. Tatum verbatim and it is Plaintiff who has misquoted Dr. Tatum.[3]  But even if the ALJ had misquoted Dr. Tatum in the manner that Plaintiff alleges, it would constitute harmless error in this case because regardless of whether K.D.B.'s condition imposes "moderate" or "mild" limitations, in either event, that would still fail to meet the

_____

[3] Dr. Tatum indicated that K.D.B. "has moderate persistent asthma" but that it "has placed only mild limitations on [her]."  (Tr. 268).  The ALJ quoted this statement verbatim in his decision. (Tr. 26).  Plaintiff, however, misquotes the ALJ by stating that "ALJ Cooper summarizes the Pediatrician's opinion of Plaintiff's condition as "mild."  (Pl.'s Mem. 9).

11

standard of "marked" or "extreme" limitations necessary to demonstrate disability under the Regulations.  *See* 20 C.F.R. § 416.926a(d).

> ### 3.   The ALJ's Use of an Older Teacher Questionnaire Does Not Constitute Reversible Error.

Likewise, Plaintiff's argument concerning the Teacher Questionnaire fails to point to any error by the ALJ.  While the question of whether a Teacher Questionnaire should be treated with the same weight as an evaluation by a medical doctor or whether consideration of the newer Teacher Questionnaire written by Mrs. Shorter makes any difference for Plaintiff's case is far from clear, that is not the critical inquiry here.  Rather, the key problem for Plaintiff is her failure to explain how the ALJ erred or present any supporting arguments or legal authority on this claim. As it stands, the argument remains too undeveloped for the court to make any determinations regarding it.  *See N.L.R.B. v. McClain of Georgia, Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are generally deemed to be waived.").

> ### c.   The ALJ Gave Proper Weight to Testimony at the Hearing.

> ### 1.   The ALJ Gave Proper Weight to Medical Testimony.

Plaintiff cites *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997), for the proposition that an ALJ must state clearly the reasons for giving less weight to the opinion of a treating source. (Pl.'s Mem. 7).  Plaintiff then references *Hensley v. Astrue*, 573 F.3d 263 (2009),[4] a Sixth Circuit case in which an ALJ was found to have abused his discretion by reaching a conclusion somewhere in between two conflicting views submitted by medical

---

[4]The court cannot be entirely sure if this is the same case that Plaintiff intended to cite because Plaintiff failed to correctly cite this case in her brief. (Pl.'s Mem. 7).  However, based upon the quotes referenced in Plaintiff's brief, the court is confident that this is the correct case.

examiners.  However, Plaintiff has not explained how *Hensley* is similar to the instant case or why it is consistent with Eleventh Circuit precedent.  Rather, Plaintiff merely asserts in conclusory fashion that "ALJ Cooper cannot rely solely on the Pediatrician, Dr. Tatum's statement and exclude the specialists from Children's Hospital."  (Pl.'s Mem. 8).

The court has analyzed *Hensley v. Astrue*.  That case is distinguishable from this one. Here, the record does not indicate that the ALJ relied solely on the opinion of Dr. Tatum.  In addition to Dr. Tatum's testimony, the ALJ also noted the testimony of Dr. Hartig (Tr. 25), medical records from Children's Health System (Tr. 25-29), treatment from K.D.B.'s pediatrician (Tr. 26), school records (Tr. 25-29), and teachers' reports (Tr. 26-28).  Furthermore, Plaintiff does not contend, nor does this court find in its review of the Record, that there is a substantial difference between the conclusions reached by Dr. Tatum and the specialists from Children's Hospital—at least, not enough to suggest that the case would have come to a different outcome had the ALJ relied more exclusively on the opinions of the medical staff from Children's Hospital.

To the extent Plaintiff's argument can be read as asserting that the ALJ acted inconsistently with *Lewis v. Callahan* and committed procedural error by giving so much weight to the testimony of Dr. Tatum, K.D.B.'s treating physician, that assertion lacks merit.  In *Lewis v. Callahan*, the Eleventh Circuit reaffirmed that "[t]he law of this circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary."  125 F.3d 1436, 1440 (11th Cir. 1997) (citing *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985)).  However, in its decision the Eleventh Circuit proceeded to clarify the rationale behind this law by referencing the Social Security Regulations:

13

> Generally, we give more weight to opinions from your treating sources, since these medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultive examinations or brief hospitalizations.

*Id.* (citing 20 C.F.R. § 404.1527(d)(2)).   There, *Lewis* stands for a simple proposition: as a general rule, treating physicians are more familiar with their patients than unacquainted examiners; therefore, testimony from treating physicians is generally to be considered more reliable than records from consultative examinations or brief hospitalizations.   As such, testimony from treating physicians should be given substantial or considerable weight.

In light of the rationale of *Lewis*, Plaintiff's argument here is confusing.   Dr. Tatum is one of K.D.B.'s treating physicians.  (Tr. 268.)   Therefore, by giving great weight to Dr. Tatum's testimony, the ALJ has performed precisely what *Lewis* commands him to do.   Plaintiff's argument is therefore without merit.

## 2.   The ALJ Did Not Improperly Discount Plaintiff's Subjective Testimony.

Plaintiff maintains that her subjective testimony regarding K.D.B.'s asthma medication's side effects and the difficulty K.D.B. had with homework should be accepted as true based on *Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  (Pl.'s Mem. 8, 9).   There are two problems with this argument.   First, the legal standard articulated in *Hale v. Bowen* does not apply to the facts of this case.   Second, even if the court were to accept Plaintiff's subjective testimony as true, such an admission would be of no help to Plaintiff here.

Plaintiff cites *Hale v. Bowen* to stand for the proposition that "[i]f the ALJ discredits such subjective testimony, he must provide explicit and adequate reasons for so doing" and concludes that, because the ALJ "fail[ed] to note any specific inconsistenc[ies]" between Plaintiff's

14

testimony and other items on record, Plaintiff's subjective testimony regarding K.D.B. should have been accepted as true. (Pl.'s Mem. 8, 9). This myopic reading of *Hale*, however, misses the forest for the trees. In *Hale*, the Eleventh Circuit actually articulated the test for evaluating subjective *pain*. This standard was first set forth in *Hand v. Heckler*, 761 F.2d 1545 (11th Cir. 1985), which held that in determining whether the claimant suffers from disabling pain:

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.

*Hand v. Heckler*, 761 F.2d at 1548 (quoting S.Rep. No. 466 at 24); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

It is the next part of the test that Plaintiff has lifted out of context. If a claimant testifies as to her subjective complaints of disabling pain and the ALJ decides not to credit such testimony, the ALJ "must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *see also, Holt v Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991), *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995). When there is a failure to articulate the reasons for discrediting it, properly presented subjective pain testimony requires, as a matter of law, that the testimony is to be accepted as true. *Holt*, 921 F.2d at 1223; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988); *Hale v. Bowen*, 831 F.2d at 1011. While this last section of the test may, at first glance, appear to favorably apply to Plaintiff, a more complete consideration of the pain standard leads the court to conclude that it would be inappropriate to apply the *Hand* standard to this case as Plaintiff has requested.

The level of consideration given to subjective testimony regarding a claimant's own pain in Social Security hearings constitutes an exception to the general treatment of subjective testimony.  As a general matter, it may be viewed as something of a truism to say that a claimant's subjective testimony is worth little unless it is backed by objective evidence.  The pain standard developed by the Eleventh Circuit, however, recognizes that pain is a wholly subjective experience; it cannot be placed on exhibit for the judge to examine and it is therefore difficult, if not impossible, to prove objectively.  Indeed, everyday common experience informs fact finders that pain can exist even when there are evidentiary challenges in demonstrating it. As a result of the particular nature of pain, an evidentiary standard for subjective pain testimony that is too high would deny benefits to meritorious claims.  On the other hand, a standard that is too low would allow disingenuous claimants to prevail.  The pain standard in this Circuit was developed as a way to balance these competing concerns, allowing the courts to more accurately acknowledge the claimant's pain while providing an objective basis for determining the claimant's pain.[5]

Given that the pain standard was developed to resolve the peculiar problems associated with evaluating a claimant's own pain testimony, application of the standard in a wholly different context, such as evaluating subjective testimony on a matter unrelated to pain, would be improper.  The Eleventh Circuit's pain standard should not be conflated with a standard for evaluating any garden variety of subjective testimony.

---

[5]For a brief history of the development of the pain standard in the Eleventh Circuit, *see Elam v. Railroad Retirement Board*, 921 F.2d 1210, 1213-17 (11th Cir. 1991).

16

      **d.**     **The ALJ Developed a Full and Fair Record in this Case.**

            **1.**     **The ALJ Developed a Full and Fair Record with Regard to the IQ Tests.**

Plaintiff has also asserted that the ALJ failed in his duty to develop a full and fair record in two ways. First, Plaintiff contends that the IQ test presented at the hearing was outdated. (Pl.'s Mem. 6) (citing 20 C.F.R. Part 404, Subpart P, Appendix 1 § 112.00 (D)(10)) ("IQ test results obtained between ages 7 and 16 should be considered current for . . . 2 years when the IQ is 40 or above."). And based on the assumption that the first test is invalid, Plaintiff further argues that "there was not a valid verbal, performance, or full-scale IQ score" presented at the hearing. (Pl.'s Mem. 10). According to Plaintiff, this "resulted in an undeveloped record" and therefore the ALJ failed to execute his duty to develop a full and fair record. (Pl.'s Mem. 10). For the reasons noted below, this argument is off target.

To be sure, the ALJ has a duty to develop a full and fair record. *Todd v. Heckler*, 736 F.2d 641, 642 (11th Cir. 1984); *Cowart v. Schweiker*, 662 F.2d 731, 735-36 (11th Cir. 1981). However, while the ALJ has a basic duty to develop a full and fair record, it is the claimant's burden to prove her case and produce evidence demonstrating disability. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [s]he is disabled, and, consequently, [s]he is responsible for producing evidence in support of h[er] claim.")

While it does appear that the IQ test results submitted at the hearing were not current, it is not the fault of the ALJ if the evidence submitted by Plaintiff was outdated. The ALJ builds a full and fair record based upon the evidence that a claimant submits to prove her case. Again, it

is emphatically Plaintiff's burden to prove disability.  And because it is Plaintiff's responsibility

for producing evidence of K.D.B.'s disability, it is Plaintiff's duty to ensure that the evidence is

accurate and up to date.  That was not done in this case.

> **2.      The ALJ Did Not Err in Declining to Request a Consultative Examination.**

Finally, Plaintiff argues that "[t]he Commissioner erred in failing to seek a Consultative

Exam" and "also in failing to have a Medical Examiner provide testimony at the hearing in this

case."  (Pl.'s Mem. 11).  Plaintiff does not (1) mention the need for a Medical Examiner any

further in her brief, (2) craft a legal theory, or (3) cite any relevant authority for this sub-issue.

Accordingly, the court is compelled to consider this part of the argument waived.  *See N.L.R.B.*

*v. McClain of Georgia, Inc.*, 138 F.3d at 1422.

With regard to the ALJ's failure to seek a consultative examination, this Circuit has noted

that because the ALJ has a duty to develop a full and fair record "it is reversible error for an ALJ

not to order a consultative examination when such an evaluation is necessary for him to make an

informed decision."  *Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988); *Reeves v.*

*Heckler*, 734 F.2d 519, 522 n.1 (11th Cir. 1984); *Stutts v. Astrue*, 489 F.Supp. 2d 1291, 1294

(N.D. Ala 2007).  The threshold consideration for the court to consider is when an ALJ needs a

consultative examination in order to make an informed decision.  An ALJ "has a duty to develop

the record where appropriate but is not required to order a consultative examination as long as

the record contains sufficient evidence for the administrative law judge to make an informed

decision." *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) (citing

*Doughty v. Apfel*, 245 F.3d 1274, 1281 (11th Cir. 2001).

As the following examples indicate, the record contains more than sufficient evidence for the ALJ to have made an informed decision. Extensive reports from K.D.B.'s emergency visits to Children's Health System are documented. (Tr. 218-31, 255-60, 262-66, 284-379). Records from K.D.B.'s treating physician, Dr. Philip M. Tatum, note "somewhat well[-]controlled" moderate persistent asthma that places "only mild limitations" on K.D.B.'s ability to function. (Tr. 268). On May 8, 2007, reviewing psychologist Dr. Eugene E. Fleece determined that K.D.B. did not have an impairment that meets or equals, medically or functionally, a listed impairment. (Tr. 271). Similarly, on May 9, 2007, reviewing physician Dr. Richard Whitney also concluded that K.D.B. did not have an impairment that meets or medically/functionally equals a listed impairment. (Tr. 272). School records written by K.D.B.'s math teacher, Angela Smith, indicated instructional and behavioral concerns, but no signs of health or medical problems. (Tr. 243). Psychometrist Joy Walker Hernandez's examinations of K.D.B. found that K.D.B. "recalled and understood instructions without difficulty" and that K.D.B. "adapted readily and easily to new tasks as testing progressed," concluding that K.D.B.'s "[a]ttention and concentration skills appeared to be normal for a child of [K.D.B.'s] age." (Tr. 239). K.D.B. achieved a full scale IQ score of 82. (Tr. 239). In September 2006, a Multidisciplinary Eligibility Determination Committee concluded that there was a discrepancy between K.D.B.'s abilities and her academic achievement, but ruled out mental retardation as the primary cause of her achievement levels. (Tr. 235). A Teacher Questionnaire completed in October 2008 by Ms. Shorter indicated no problems and found K.D.B.'s functioning to be "age-appropriate." (Tr. 202). Another October 2008 Teacher Questionnaire completed by Bennette Dotson reported "slight problems" but likewise considered K.D.B.'s functioning to be "age appropriate." (Tr. 210-11). Based on this information, the court finds that there is sufficient record evidence for

19

the ALJ to have made an informed decision without requesting a consultative examination. Therefore, the ALJ was not required to request a consultative examination and did not fail in his duty to develop the record.

**VI.**     **Conclusion**

The court concludes that the ALJ's determination that K.D.B. is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this _____11th_____ day of February, 2011.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE